UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

ARANTZA CASTRO,                                              CASE NO.

      Plaintiff,

vs.

OFFICINA PROFUMO FARMACEUTICA DI SANTA
MARIA NOVELLA OF AMERICA CORPORATION,
a Foreign Profit Corporation
D/B/A SANTA MARIA NOVELLA

      Defendant.

_____/

## COMPLAINT FOR DECLARATORY AND
## INJUNCTIVE RELIEF, AND JURY TRIAL DEMAND

Plaintiff, ARANTZA CASTRO, through undersigned counsel, sues Defendant,

OFFICINA PROFUMO FARMACEUTICA DI SANTA MARIA NOVELLA OF AMERICA

CORPORATION, a foreign profit corporation d/b/a SANTA MARIA NOVELLA (hereinafter

referred to as "SANTA MARIA NOVELLA"), for declaratory and injunctive relief, and

damages, and alleges as follows:

This action is brought under Title III of the Americans with Disabilities Act ("ADA"), that is

codified in 42 U.S.C. §§12181-12189.

1)      This action is also brought pursuant to 28 C.F.R. Part 36.

2)      This Court has jurisdiction over this case based on federal question jurisdiction, as provided

in 28 U.S.C. §1331 and the provisions of the ADA.

3)      Furthermore, because this Court has jurisdiction over the ADA claim, the Court has

supplementary jurisdiction over Plaintiff's common law tort claim pursuant to 28 U.S.C. §1367.

4)     Plaintiff is sui juris, and she is disabled as defined by the ADA and ADA Amendments Act of 2008, 42 U.S.C. §12101 ("ADAAA").

5)     Plaintiff seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

6)     Plaintiff desires to prevent discrimination and demands equal access to Defendant's internet website to purchase a perfume.

7)     Plaintiff also seeks declaratory and injunctive relief for trespass against the Plaintiff's computer. The computer is Plaintiff's personal property, and a claim for trespass attached to same.

8)     The Defendant is also liable for compensatory damages to Plaintiff as a result of the trespass to Plaintiff's personal property.

9)     The remedies provided under common law for trespass are not exclusive, and same may be sought in connection with suits brought under the ADA.

10)    Venue is proper in the Southern District of Florida, Miami-Dade Division, since all events, actions, injuries, and damages complained of herein occurred in the Southern District of Florida.

11)    Furthermore, Plaintiff is a resident of Miami-Dade County which falls within the Miami Division of the Southern District of Florida.

12)    At all relevant times, Plaintiff is and was visually impaired and has Leber Congenital Amaurosis since birth that substantially impairs Plaintiff's vision whereby her vision fluctuates from 20/250 to 20/800.

13)    Plaintiff's visual impairment interferes with her day-to-day activities and causes limitations in visualizing her environment. As such, Plaintiff is a member of a protected class under the ADA, 42 U.S.C. § 12102(1) - (2), the regulations implementing the ADA set forth at 28 CFR §§ 36.101, et seq., and in 42 U.S.C. 3602, §802(h).

14)     In addition, Plaintiff is an advocate of the rights of similarly situated disabled persons. As such is a "tester" for the purposes of asserting her civil rights and monitoring, ensuring, and determining whether places of public accommodation and/or their respective and associated websites are in compliance with the ADA and any other applicable disability laws, regulations, and ordinances.

15)     Plaintiff is limited in the performance of major life activities due to her visual disability and she requires assistive technologies, auxiliary aids, and services for effective communication, including communication in connection with her use of a computer.

16)     Plaintiff uses the computer regularly, but due to her visual disability, Plaintiff cannot use her computer without the assistance of appropriate and available auxiliary aids, screen reader software, and other technology and assistance. In order to assist her, Plaintiff uses NVDA screen reader software that is readily available commercially. As background, screen reader software translates the visual internet into an auditory equivalent.  The software reads the content of a webpage to the user at a rapid pace.

17)     "The screen reading software uses auditory cues to allow a visually impaired user to effectively use websites. For example, when using the visual internet, a seeing user learns that a link may be 'clicked,' which will bring her to another webpage, through visual cues, such as a change in the color of the text (often text is turned from black to blue). When the sighted user's cursor hovers over the link, it changes from an arrow symbol to a hand. The screen reading software uses auditory -- rather than visual -- cues to relay this same information. When a sight impaired individual reaches a link that may be 'clicked on,' the software reads the link to the user, and after reading the text of the link says the word 'clickable.'…Through a series of auditory cues read aloud by the screen reader, the visually impaired user can navigate a website by listening and

3

responding with her keyboard." *Andrews v. Blick Art Materials, LLC, 17-CV-767, 2017 WL 6542466, at *6-7 (E.D.N.Y. Dec. 21, 2017)*.

18)    Plaintiff frequently accesses the internet. Because she is significantly and permanently visually disabled, to effectively communicate and comprehend information available on the internet and thereby access and comprehend websites, Plaintiff uses commercially available screen reader software to interface with the various websites.

19)    Defendant, SANTA MARIA NOVELLA, is a foreign profit corporation authorized to do business and doing business in the State of Florida.

20)    Defendant, SANTA MARIA NOVELLA, is a company that sells fragrances, skincare, body and hair products, fragrance diffusers, and candles. There is a retail location in Miami-Dade County.

21)    At all times material hereto, Defendant was and still is a private entity which owns and operates retail locations under the brand name "SANTA MARIA NOVELLA".  The stores are open to the public, and each of Defendant's locations is defined as a "public accommodation" within the meaning of Title III of the ADA because Defendant is a private entity which owns and/or operates "[A] bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment," per 42 U.S.C. §12181(7)(E) and 28 C.F.R. §36.104(2).

22)    Because Defendant is a store open to the public, each of Defendant's physical stores is a place of public accommodation subject to the requirements of the ADA, 42 U.S.C. §12182, §12181(7)(B), and its implementing regulations, 28 C.F.R. Part 36.

23)    At all times material hereto, Defendant was and still is an organization owning and operating the website located at https://us.smnovella.com/. Since the website is open through the internet to the public as an extension of the retail stores, by this nexus the website is an intangible

service, privilege and advantage of Defendant's brick and mortar locations, the Defendant has subjected itself and the associated website it created and maintains to the requirements of the ADA. The website also services Defendant's physical stores by providing information on its brand and other information that Defendant is interested in communicating to its customers about its physical locations.

24)     Since the website allows the public the ability to view the products available at Defendant's locations, purchase products, through Defendant's website, subscribe to Defendant's newsletter, create an account and register to track orders, create a wish list, and learn the story behind Defendant's brand, the website is an extension of, and gateway to, Defendant's physical stores which are places of public accommodation pursuant to 42 U.S.C. § 12181(7)(E). By this nexus between Defendant's retail store locations and the Website, and the fact that the Website clearly provides support for and is connected to Defendant's stores for its operation and use, the Website is an intangible service, privilege, and advantage of Defendant's brick-and-mortar stores that must comply with all requirements of the ADA.  The Website must not discriminate against individuals with disabilities, and must not deny those individuals the same full and equal access to and enjoyment of the goods, services, privileges, and advantages as afforded the non-visually disabled public both online and in the physical stores, which are places of public accommodations subject to the requirements of the ADA.

25)     Plaintiff sought to, seeks to and intends to patronize, in the near future once the Website's access barriers are removed or remedied, one or more of Defendant's physical retail locations, check store hours and product pricing and place online orders. In the alternative, Plaintiff intends to monitor the Website in the near future as a tester to ascertain whether it has been remedied and updated to interact properly with screen reader software.

26)     Traveling outside of her home as a visually disabled individual is often a difficult, hazardous, frightening, frustrating, and confusing experience, thus the opportunity to shop and pre-shop Defendant's products, plan her visits, and to compare products, services, prices, sales, discounts, and promotions are important and necessary accommodations for Plaintiff because Defendant has not provided its business information in any other digital format that is accessible for use by blind and visually disabled individuals using screen reader software.

27)     During the month of October 2024, Plaintiff attempted on a number of occasions to utilize the Website to browse through the merchandise and online offers to educate herself as to the merchandise, sales, discounts, and promotions being offered, learn about the brick-and-mortar location, check store hours, and check product pricing with the intent to make a purchase through the Website or in one of the physical locations and with the intent to make a purchase through the website or at one of Defendant's physical stores.  Plaintiff also attempted to access and utilize the Website in her capacity as a tester to determine whether it was accessible to blind and visually disabled persons such as herself who use screen reader software to access and navigate company websites.

28)     Plaintiff utilized NVDA ("Screen Reader Software") that allows individuals who are blind and visually disabled to communicate with websites. However, Defendant's Website contains access barriers that prevent free and full use by blind and visually disabled individuals using keyboards and available screen reader software. Plaintiff attempted to purchase clothing on Defendant's website.  However, the Plaintiff was not able to freely and fully use Defendant's website because it contains access barriers that make it inaccessible to persons with disabilities, and for which there is no reasonable accommodation for the Plaintiff.

29)     Defendant's Website contains access barriers that prevent free and full use by blind and visually disabled individuals using keyboards and available screen reader software. These barriers are pervasive and include, but are not limited to:

**Santa Maria Novella**   https://us.smnovella.com

System settings while doing the review:

Operating system: Windows 11

Browser: Google Chrome v. 129.0.6668.60

Screen Reader: NVDA v. 2024.3.1

Video Recorder: OBS Studio 30.2.3

**Barriers**

**Missing Descriptions for Non-Text Content:**

In several sections of the website, non-text content lacks alternative text or descriptions. For example, product images and clickable elements like the Product Hotspot Block fail to provide meaningful descriptions for screen readers. This omission makes it difficult for visually impaired users to understand or interact with visual content, hindering their overall experience on the site.

**Inadequate Screen Reader Feedback:**

There are multiple instances where the screen reader does not communicate essential information to users. This includes missing price announcements for product cards and uncommunicated field purposes in sections like the Services Block and Newsletter Block. Additionally, form errors and missing confirmation messages for actions such as quantity

increases in the Cart Modal leave users without the feedback necessary to interact successfully with the site.

**Poor Focus Management:**

Focus management is inconsistent across the site. In various modals, such as the Search Dialog and the Aqua di Rose Options Modal, focus is not contained within the modal, allowing users to interact with elements behind the modal. This breaks the logical navigation sequence and confuses users, especially those relying on keyboard navigation. Additionally, focus is incorrectly assigned to elements outside of interactive elements, such as the search bar.

**Inefficient Navigation and Keyboard Accessibility Issues:**

Keyboard-only users face significant challenges when navigating the website. The navigation menu's sub-menu items lack focus visibility, making it hard to track where the user is on the page. Additionally, elements like the search bar and Aqua di Rose Options Modal cannot be navigated or operated using the keyboard, limiting users' ability to fully interact with the site. The absence of a "skip to content" mechanism further exacerbates this issue, forcing users to navigate through repetitive content.

**Unclear Instructions and Labels:**

Several fields and interactive components on the site do not provide adequate instructions for users, particularly those relying on assistive technology. For instance, the search bar lacks operational instructions, and the "Address" field in the Delivery Form triggers an attempt to submit the form prematurely when the enter key is pressed. This lack of guidance leads to user confusion and input errors.

**Uncommunicated Form Errors:**

Throughout forms, such as the Create Account and Login forms, there are no error messages communicated when invalid characters (such as whitespace in email fields) are entered. This leaves users unaware of the issues preventing form submission, resulting in frustration and the potential for failed transactions or account creations.

A1: Malfunctions Caused by AccessiBe Accessibility Adjustments

The AccessiBe accessibility adjustments, specifically Keyboard Navigation, Blind Users, Highlight Hover, and Highlight Focus, have caused significant malfunctions throughout the site. Rather than improving accessibility, these features created multiple navigation issues and screen flickering. For instance, when interacting with the search bar, the screen would blink erratically, making it difficult for users to focus on their tasks and impeding smooth navigation. These malfunctions introduce more barriers than they resolve, frustrating users who rely on assistive technology and impairing overall site usability.

**Violation 1: 2.4.7 Focus Visible**

Any keyboard operable user interface has a mode of operation where the keyboard focus indicator is visible.

Submenu items within the Navigation Menu do not have visible focus indicators. This creates challenges for keyboard users, as they are unable to visually track their navigation through the submenu options.

Applicable WCAG 2.1 Standard at Issue: 2.4.7 Focus Visible (Level AA)

URL Where Issue Was Encountered:

https://us.smnovella.com/

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EWnshMKAtZVJuZOfZarRTFkBqg9HVQCF

LgPmEwWDDgUpsQ

Issue A1 Issue caused by accessiBe' s Accessibility Adjustments

Issues generated by Web Accessibility Software

The Accessibility Plugin causes the screen to blink intermittently while interacting with

the search bar, creating confusion and disrupting the user experience. This issue hinders

accessibility rather than enhancing it.

URL Where Issue Was Encountered:

https://us.smnovella.com/

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EeWmYmPj8xZOkHCs0uPn39MBtzIUtdnSN

xzuPFmrmobtcQ


**Violation 2: 3.3.2 Labels or Instructions**

Labels or instructions are provided when content requires user input.

The search bar does not provide any instructions for users on how to operate it, making it

difficult for users, especially those using assistive technology, to understand how to

perform searches effectively.

Applicable WCAG 2.1 Standard at Issue: 3.3.2 Labels or Instructions (Level A)

URL Where Issue Was Encountered:

https://us.smnovella.com/

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EY4ijSoRpTZNqVf3keIq_RsBL2cFlKLltNEtf 0gMBgW9fQ

### Violation 3: 2.1.1 Keyboard

All functionality of the content is operable through a keyboard interface without requiring specific timings for individual keystrokes, except where the underlying function requires input that depends on the path of the user's movement and not just the endpoints.

The search button cannot be operated, and users cannot navigate to the list of search suggestions using the keyboard. This limits access to the search functionality for keyboard-only users.

Applicable WCAG 2.1 Standard at Issue: 2.1.1 Keyboard (Level A)

URL Where Issue Was Encountered:

https://us.smnovella.com/

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EXUcC8Ia01RDjSLAcpqnqGMB2eW4bwwl GxKsMCyYlU1rBQ

### Violation 4: 2.4.3 Focus Order

If a Web page can be navigated sequentially and the navigation sequences affect meaning or operation, focusable components receive focus in an order that preserves meaning and operability.

Users are allowed to navigate to elements on the underlying page even while the search modal is still visible, breaking the expected interaction sequence and confusing assistive technology users.

Applicable WCAG 2.1 Standard at Issue: 2.4.3 Focus Order (Level A)

URL Where Issue Was Encountered:

https://us.smnovella.com/

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EdKvs4GrJQtNhG7m9G7RfTsBrZC5aShiy5C
zv3VcOt-xtg


**Violation 5: 1.3.2 Meaningful Sequence**

When the sequence in which content is presented affects its meaning, a correct reading sequence can be programmatically determined.

Focus is incorrectly assigned to elements outside the search bar, such as those on the underlying page, while the search modal is still active, disrupting the navigation flow for assistive technology users.

Applicable WCAG 2.1 Standard at Issue: 1.3.2 Meaningful Sequence (Level A)

URL Where Issue Was Encountered:

https://us.smnovella.com/

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EefkjUT68FhEi_6gbgSB6S4Bfief8mfMm874
HdMaXbc-sA

**Violation 6: 1.3.1 Info and Relationships**

Information, structure, and relationships conveyed through presentation can be programmatically determined or are available in text.

The price information on product cards is not conveyed to screen readers, leaving visually impaired users unaware of the cost of the products they are browsing.

Applicable WCAG 2.1 Standard at Issue: 1.3.1 Info and Relationships (Level A)

URL Where Issue Was Encountered:

https://us.smnovella.com/

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/Ef6gv936mtVMnfP3LxhouysBcnui4RQuO8-Vs2gzaG2piQ


**Violation 7: 1.3.1 Info and Relationships**

Information, structure, and relationships conveyed through presentation can be programmatically determined or are available in text.

The "Read Through All The Details" link and other information within the Services Block are not properly communicated by the screen reader, leaving the purpose of the section and its links unclear for visually impaired users.

Applicable WCAG 2.1 Standard at Issue: 1.3.1 Info and Relationships (Level A)

URL Where Issue Was Encountered:

https://us.smnovella.com/

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/Ed65vGGP-

QFBldRvVfsr1LIBulwHqp9yQAhKTyCoCABGrQ

**Violation 8: 1.3.1 Info and Relationships**

Information, structure, and relationships conveyed through presentation can be

programmatically determined or are available in text.

The screen reader does not convey the purpose or details of the Services Block and

Newsletter Block, including the fields and links, leaving users unaware of the context and

function of these elements.

Applicable WCAG 2.1 Standard at Issue: 1.3.1 Info and Relationships (Level A)

URL Where Issue Was Encountered:

https://us.smnovella.com/

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/Efw_Bo0vPkRLtEo5ibEkSPcBQpbKgoI3LDU

Qq2PUPLqmHA

**Violation 9: 1.1.1 Non-text Content**

All non-text content that is presented to the user has a text alternative that serves the

equivalent purpose, except for the situations listed below. Controls, Input If non-text

content is a control or accepts user input, then it has a name that describes its purpose.

(Refer to Success Criterion 4.1.2 for additional requirements for controls and content that

accepts user input.) Time-Based Media If non-text content is time-based media, then text

alternatives at least provide descriptive identification of the non-text content. (Refer to

Guideline 1.2 for additional requirements for media.) Test If non-text content is a test or exercise that would be invalid if presented in text, then text alternatives at least provide descriptive identification of the non-text content. Sensory If non-text content is primarily intended to create a specific sensory experience, then text alternatives at least provide descriptive identification of the non-text content. CAPTCHA If the purpose of non-text content is to confirm that content is being accessed by a person rather than a computer, then text alternatives that identify and describe the purpose of the non-text content are provided, and alternative forms of CAPTCHA using output modes for different types of sensory perception are provided to accommodate different disabilities. Decoration, Formatting, Invisible If non-text content is pure decoration, is used only for visual formatting, or is not presented to users, then it is implemented in a way that it can be ignored by assistive technology.

The screen reader does not inform users about what image is being displayed or the purpose of the clickable elements in the Product Hotspot Block. This leaves visually impaired users without necessary information to navigate the content.

Applicable WCAG 2.1 Standard at Issue: 1.1.1 Non-text Content (Level A)

URL Where Issue Was Encountered:

https://us.smnovella.com/

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EWPStQyLBq9Jnibom8s1Ae4BXBku-JOOU6eyoR-559oRvg

**Violation 10: 1.3.2 Meaningful Sequence**

Information, structure, and relationships conveyed through presentation can be programmatically determined or are available in text.

When the search dialog is visible on the Search Results Page, users are allowed to navigate to elements on the underlying page, breaking the logical flow of interaction. Additionally, users are unable to close the search dialog, causing confusion and preventing proper navigation for assistive technology users.

Applicable WCAG 2.1 Standard at Issue: 1.3.2 Meaningful Sequence (Level A)

URL Where Issue Was Encountered:

https://us.smnovella.com/search?q=acqua&options%5Bprefix%5D=last

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/ESTzC-I99DFDnayEYbeVlsYBr8PMeaDrj7dPLJzDdfBexg

**Violation 11: 2.4.3 Focus Order**

If a Web page can be navigated sequentially and the navigation sequences affect meaning or operation, focusable components receive focus in an order that preserves meaning and operability.

Focus is incorrectly given to elements on the underlying page instead of remaining within the search dialog, causing disorientation for users relying on assistive technology.

Applicable WCAG 2.1 Standard at Issue: 2.4.3 Focus Order (Level A)

URL Where Issue Was Encountered:

https://us.smnovella.com/search?q=acqua&options%5Bprefix%5D=last

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EUC56COWhp5IuSHykvIMwzIBSom5gKHv
1WJvDwGPBirRuA

**Violation 12: 4.1.2 Name, Role, Value**

For all user interface components (including but not limited to: form elements, links and
components generated by scripts), the name and role can be programmatically
determined; states, properties, and values that can be set by the user can be
programmatically set; and notification of changes to these items is available to user
agents, including assistive technologies.

When users increase the quantity of items in the Cart Modal, the change is not confirmed
by the screen reader, leaving users unaware if their action was successful.

Applicable WCAG 2.1 Standard at Issue: 4.1.2 Name, Role, Value (Level A)

URL Where Issue Was Encountered:

https://us.smnovella.com/search?q=acqua&options%5Bprefix%5D=last

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EUvrrPwIHvhNgk4_eW8C-
kQBNoTOd_pTHUU2tGit5QMbJA

**Violation 13: 1.3.1 Info and Relationships**

Information, structure, and relationships conveyed through presentation can be
programmatically determined or are available in text.

The screen reader does not communicate the price of items before users press the
Checkout button, preventing them from making informed purchasing decisions.

Applicable WCAG 2.1 Standard at Issue: 1.3.1 Info and Relationships (Level A)

URL Where Issue Was Encountered:

https://us.smnovella.com/search?q=acqua&options%5Bprefix%5D=last

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EfzzNdp3nMJBqjiJraJnR90BwL1g7wt70YW3 ZG1WGP27ZQ


**Violation 14: 2.1.1 Keyboard**

All functionality of the content is operable through a keyboard interface without requiring specific timings for individual keystrokes, except where the underlying function requires input that depends on the path of the user's movement and not just the endpoints.

The Skip to Content link within the Cart Page is neither visible nor reachable by keyboard users, preventing easy access to the main content and hindering keyboard navigation.

Applicable WCAG 2.1 Standard at Issue: 2.1.1 Keyboard (Level A)

URL Where Issue Was Encountered:

https://us.smnovella.com/cart

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EZXFTY-fnAJJubkb-GVqVlYBmiEGmTOGGTGQRFGq8YxOEg


**Violation 15: 2.4.1 Bypass Blocks**

A mechanism is available to bypass blocks of content that are repeated on multiple Web pages

Users are required to navigate through the header block elements like the navigation menu (and twice) before they can access the main content, as there is no mechanism to bypass these repeated blocks of content.

Applicable WCAG 2.1 Standard at Issue: 2.4.1 Bypass Blocks (Level A)

URL Where Issue Was Encountered:

https://us.smnovella.com/cart

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EUXTQ1yVBIFHrB9h6o38mmcBElXC33XJy wUZuUtCllcZQQ


**Violation 16: 4.1.2 Name, Role, Value**

For all user interface components (including but not limited to: form elements, links and components generated by scripts), the name and role can be programmatically determined; states, properties, and values that can be set by the user can be programmatically set; and notification of changes to these items is available to user agents, including assistive technologies.

The screen reader does not confirm when the quantity is decreased by pressing the Decrease Quantity button within the Cart Items Block, leaving users unsure if their action was registered.

Applicable WCAG 2.1 Standard at Issue: 4.1.2 Name, Role, Value (Level A)

URL Where Issue Was Encountered:

https://us.smnovella.com/cart

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/ESHgiDgaJ5lNiU2HegfWY1UBZxY3E4wa4o

FvqCIZT5XILA

**Violation 17: 3.3.2 Labels or Instructions**

Labels or instructions are provided when content requires user input.

The email field in the Checkout Contact Form is not communicated as required to screen reader users, potentially leading to incomplete submissions.

Applicable WCAG 2.1 Standard at Issue: 3.3.2 Labels or Instructions (Level A)

URL Where Issue Was Encountered:

https://us.smnovella.com/checkouts/cn/Z2NwLXVzLWVhc3QxOjAxSkFFWUE4MVM5

RDNIQTdTS0UzWFpETk43

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EdkmI-

qX0IBOhfPnZB59AW0BzVxNOPhHOhTOZkaRxFMb2A

**Violation 18: 3.3.2 Labels or Instructions**

Labels or instructions are provided when content requires user input.

Pressing the Enter key while in the Address Field causes the Delivery Form to attempt submission, confusing users who expect to continue filling in other fields.

Applicable WCAG 2.1 Standard at Issue: 3.3.2 Labels or Instructions (Level A)

URL Where Issue Was Encountered:

https://us.smnovella.com/checkouts/cn/Z2NwLXVzLWVhc3QxOjAxSkFFFWUE4MVM5

RDNIQTdTS0UzWFFpETk43

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/ETQut4iZwplIlOCjWDUnmrkBb8rvNhUJ7L

NOrLUPSktZHg


**Violation 19: 3.3.1 Error Identification**

If an input error is automatically detected, the item that is in error is identified and the

error is described to the user in text.

The screen reader fails to communicate the invalid email in the Checkout Contact Form

and the invalid zip code in the Delivery Form, leaving users unaware of the errors.

Applicable WCAG 2.1 Standard at Issue: 3.3.1 Error Identification (Level A)

URL Where Issue Was Encountered:

https://us.smnovella.com/checkouts/cn/Z2NwLXVzLWVhc3QxOjAxSkFFFWUE4MVM5

RDNIQTdTS0UzWFFpETk43

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/ERnFGzAe4eZNnRSpQljNL0gB1l_psw9xTq

NBE3ACkj1t9A


**Violation 20: 3.3.1 Error Identification**

If an input error is automatically detected, the item that is in error is identified and the

error is described to the user in text.

The login form does not provide error messages when an invalid email is entered, nor does it verify the password, leaving users unable to correct input mistakes.

Applicable WCAG 2.1 Standard at Issue: 3.3.1 Error Identification (Level A)

URL Where Issue Was Encountered:

https://us.smnovella.com/account/login?checkout_url=%2Fcheckouts%2Fcn%2FZ2NwL XVzLWVhc3QxOjAxSkFFWUE4MVM5RDNIQTdTS0UzUWFpETk43%3Fcompany_lo cation_id%26locale%3Den-US

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EcaM9KIYxclFlYZb2mWLhN8BNR- Xbkjz1KS58lcvc_6mnA


**Violation 21: 3.3.1 Error Identification**

If an input error is automatically detected, the item that is in error is identified and the error is described to the user in text.

The Create Account form does not provide error messages when users enter invalid email addresses, nor does provide a mechanism for the user to verify the password, making it difficult for users to know why their submission failed.

Applicable WCAG 2.1 Standard at Issue: 3.3.1 Error Identification (Level A)

URL Where Issue Was Encountered:

https://us.smnovella.com/account/register?checkout_url=%2Fcheckouts%2Fcn%2FZ2N wLXVzLWVhc3QxOjAxSkFFWUE4MVM5RDNIQTdTS0UzUWFpETk43%3Fcompany _location_id%26locale%3Den-US

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EU7NaZWO71BDvDwF_cV0kNMBDg_pdV AW3xYiIo_nIRPXAA

**Violation 22: 3.3.1 Error Identification**

If an input error is automatically detected, the item that is in error is identified and the error is described to the user in text.

3.3.1-Register-When users enter a whitespace character in the email field during account creation, the screen reader fails to detect and announce the issue. This lack of feedback prevents users from identifying and correcting the error, which may lead to failed form submissions.

Applicable WCAG 2.1 Standard at Issue: 3.3.1 Error Identification (Level A)

URL Where Issue Was Encountered:

https://us.smnovella.com/account/register?checkout_url=%2Fcheckouts%2Fcn%2FZ2N wLXVzLWVhc3QxOjAxSkFFWUE4MVM5RDNIQTdTS0UzWFpETk43%3Fcompany _location_id%26locale%3Den-US

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/ERaobrhxNT5KgJbixNuC9vkBrPGDEhXstkX FomnUATgdKA

**Violation 23: 2.1.1 Keyboard**

All functionality of the content is operable through a keyboard interface without requiring specific timings for individual keystrokes, except where the underlying function requires input that depends on the path of the user's movement and not just the endpoints.

The elements within the Aqua Di Rose Options Modal cannot be operated using the keyboard, making it inaccessible to keyboard-only users.

Applicable WCAG 2.1 Standard at Issue: 2.1.1 Keyboard (Level A)

URL Where Issue Was Encountered:

https://us.smnovella.com/collections/skincare

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/Efic5k6dWYFAoWndRt4esdoBtjs9T3_wvaY8DSg_NDek0Q

**Violation 24: 2.4.3 Focus Order**

If a Web page can be navigated sequentially and the navigation sequences affect meaning or operation, focusable components receive focus in an order that preserves meaning and operability.

Focus is incorrectly given to elements outside the Aqua Di Rose Options Modal while it is still active, confusing users relying on assistive technology.

Applicable WCAG 2.1 Standard at Issue: 2.4.3 Focus Order (Level A)

URL Where Issue Was Encountered:

https://us.smnovella.com/collections/skincare

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EZwhpAj3P-5BhZnrrmyBPIkBOiBRzR6_jiBF0HBrcCfxvw

30)     Although the Website appeared to have an "accessibility" statement displayed and an "accessibility" widget/plugin added, the "accessibility" statement and widget/plugin, when tested, still could not be effectively accessed by, and continued to be a barrier to, blind and visually disabled persons, including Plaintiff as a completely blind person. Plaintiff, although she attempted to access the statement, thus, was unable to receive any meaningful or prompt assistance through the "accessibility" statement and the widget/plugin to enable her to quickly, fully, and effectively navigate the Website.

31)     The fact that Plaintiff could not communicate with or within the Website left her feeling excluded, as she is unable to participate in the same shopping experience, with the same access to the merchandise, sales, discounts, and promotions, as provided at the Website and in the physical locations as the non-visually disabled public.

32)     Plaintiff desires and intends, in the near future once the Website's access barriers are removed or remedied, to patronize one or more of Defendant's physical stores and to use the Website, but she is presently unable to do so as she is unable to effectively communicate with Defendant, due to her severe visual disability and the Website's access barriers. Alternatively, as a tester using screen reader software, Plaintiff is unable to effectively access, navigate, and communicate with Defendant through the Website due to her severe visual disability and the Website's access barriers. Thus, Plaintiff, as well as others who are blind and with visual disabilities, will suffer continuous and ongoing harm from Defendant's intentional acts, omissions, policies, and practices as set forth herein unless properly enjoined by this Court.

33)     On information and belief, Defendant has not initiated a Web Accessibility Policy to ensure full and equal use of the Website by individuals with disabilities.

34)     On information and belief, Defendant has not instituted a Web Accessibility Committee to ensure full and equal use of Website by individuals with disabilities.

35)     On information and belief, Defendant has not designated an employee as a Web Accessibility Coordinator to ensure full and equal use of the Website by individuals with disabilities.

36)     On information and belief, Defendant has not instituted a Web Accessibility User Accessibility Testing Group to ensure full and equal use of the Website by individuals with disabilities.

37)     On information and belief, Defendant has not instituted a User Accessibility Testing Group to ensure full and equal use of the Website by individuals with disabilities.

38)     On information and belief, Defendant has not instituted a Bug Fix Priority Policy.

39)     On information and belief, Defendant has not instituted an Automated Web Accessibility Testing program.

40)     Defendant has not created and instituted an effective Specialized Customer Assistance line or service or email contact mode for customer assistance for the visually disabled.

41)     Defendant has not created and instituted on the Website a useful or accessible page for individuals with disabilities, nor displayed a link and information hotline, nor created an information portal explaining when and how Defendant will have the Website, applications, and digital assets accessible to the visually disabled or blind community.

42)     The Website does not meet the Web Content Accessibility Guidelines ("WCAG") 2.0 Level AA or higher versions of web accessibility.

43)     Defendant has not disclosed to the public any intended audits, changes, or lawsuits to correct the inaccessibility of the Website to visually disabled individuals who want the safety and

privacy of purchasing Defendant's products offered on the Website and in the physical stores from their homes.

44)     Defendant thus has not provided full and equal access to and enjoyment of the goods, services, facilities, privileges, advantages, and accommodations provided by and through the Website and their physical stores in contravention of the ADA.

45)     Public accommodations under the ADA must ensure that their places of public accommodation provide effective communication for all members of the general public, including individuals with visual disabilities such as Plaintiff.

46)     The broad mandate of the ADA is to provide an equal opportunity for individuals with disabilities to participate in and benefit from all aspects of American civic and economic life. That mandate extends to internet shopping websites such as the Website at issue in the instant action.

47)     Defendant is, and at all relevant times has been, aware of the barriers to effective communication within the Website which prevent individuals with visual disabilities from the means to comprehend information presented therein.

48)     Defendant is, and at all relevant times has been, aware of the need to provide full access to all visitors to the Website.

49)     The barriers that exist on the Website result in discriminatory and unequal treatment of individuals with visual disabilities, including Plaintiff.

50)     Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged hereinabove, and this suit for declaratory judgment and injunctive relief is her only means to secure adequate and complete redress from Defendant's unlawful and discriminatory practices in connection with its website access and operation.

51)     Notice to Defendant is not required because of Defendant's failure to cure the violations.

52)     Enforcement of Plaintiff's rights under the ADA is right and just pursuant to 28 U.S.C. §§2201 and 2202.

53)     Plaintiff has retained the undersigned attorneys to represent her in this case and has agreed to pay them a reasonable fee for their services.

## COUNT I – VIOLATION OF THE ADA

54)     Plaintiff realleges paragraphs 1 through 53 as if set forth fully herein.

55)     Pursuant to 42 U.S.C. §12181(7)(B), Defendant is a public accommodation under the ADA and thus is subject to the ADA.

56)     Pursuant to 42 U.S.C. §12181(7)(B), the Website is covered under the ADA because it provides the general public with the ability to view the products available at Defendant's locations, purchase products through Defendant's website, subscribe to Defendant's newsletter, create an account and register to track orders, create a wish list, and learn the story behind Defendant's brand. The Website thus is an extension of, gateway to, and intangible service, privilege, and advantage of Defendant's physical locations. Further, the Website also serves to augment Defendant's physical stores by providing the public information about the stores and by educating the public as to Defendant's brand and available products merchandise sold through the Website and in the physical stores.

57)     Under Title III of the ADA, 42 U.S.C. §12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

58)      Specifically, under Title III of the ADA, 42 U.S.C. §12182(b)(2)(A)(II), unlawful discrimination includes, among other things, "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations."

59)      In addition, under Title III of the ADA, 42 U.S.C. §12182(b)(2)(A)(III), unlawful discrimination includes, among other things, "a failure to take such steps, as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

60)      The Website must comply with the ADA, but it does not as specifically alleged hereinabove and below.

61)      Because of the inaccessibility of the Website, individuals with visual disabilities are denied full and equal access to and enjoyment of the goods, information, and services that Defendant has made available to the public on the Website and in their physical stores in violation of 42 U.S.C. §12101, et seq, and as prohibited by 42 U.S.C. §12182, et seq.

62)      The Website was subsequently visited by Plaintiff's expert in October and the expert determination was that the same access barriers that Plaintiff had initially encountered, as well as numerous additional access barriers, existed. Defendant thus has made insufficient material changes or improvements to the Website to enable its full use and enjoyment by, and accessibility

to, blind and visually disabled persons such as Plaintiff. Also, when the Website was visited by the expert, although the Website appeared to have an "accessibility" statement and widget/plugin linked on and displayed from its home page, the "accessibility" statement and widget/plugin, when tested, still could not be effectively used or accessed by, and continued to be a barrier to, blind and visually disabled persons such as Plaintiff. Defendant furthermore has not disclosed to the public any intended audits, changes, or lawsuits to correct the inaccessibility of the Website to visually disabled individuals, nor has it posted on the Website an effective and useful "accessibility" notice, statement, or policy to provide blind and visually disabled person such as Plaintiff with a viable alternative means to access and navigate the Website. Defendant thus has failed to make reasonable modifications in its policies, practices, or procedures when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, in violation of 28 C.F.R. §36.302. The lack of a viable and effective "accessibility" notice, policy, or statement and the numerous access barriers as set forth in the Declaration of Plaintiff's expert, Mario Saavedra, attached hereto and the contents of which are incorporated herein by reference, continue to render the Website not fully accessible to users who are blind and visually disabled, including Plaintiff.

63)    More violations may be present on other pages of the Website, which can and will be determined and proven through the discovery process in this case.

64)    There are readily available, well-established guidelines on the internet for making Websites accessible to the blind and visually disabled. These guidelines have been followed by other large business entities in making their websites accessible. Examples of such guidelines include, but are not limited to, adding alt-text to graphics and ensuring that all functions can be performed using a keyboard. Incorporating such basic components to make the Website accessible would neither

fundamentally alter the nature of Defendant's business nor would it result in an undue burden to Defendant.

65)     Defendant has violated the ADA -- and continue to violate the ADA -- by denying access to the Website by individuals such as Plaintiff with visual disabilities who require the assistance of interface with screen reader software to comprehend and access internet websites. These violations within the Website are ongoing.

66)     The ADA requires that public accommodations and places of public accommodation ensure that communication is effective.

67)     According to 28 C.F.R. §36.303(b)(1), auxiliary aids and services include "voice, text, and video-based telecommunications products and systems".   Indeed, 28 C.F.R.§36.303(b)(2) specifically states that screen reader software is an effective method of making visually delivered material available to individuals who are blind or have low vision.

68)     According to 28 C.F.R. §36.303(c), public accommodations must furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities: "In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability," 28 C.F.R. §36.303(c)(1)(ii).

69)     Part 36 of Title 28 of the C.F.R. was designed and is implemented to effectuate subtitle A of Title III of the ADA, which prohibits discrimination on the basis of disability by public accommodations, and requires places of public accommodation to be designed, constructed, and altered in compliance with the accessibility standards established by Part 36.

70)     As alleged hereinabove, the Website has not been designed to interface with the widely and readily available technologies that can be used to ensure effective communication, and thus violates the ADA.

71)     As a direct and proximate result of Defendant's failure to provide an ADA compliant Website, with a nexus to their brick-and-mortar stores, Plaintiff has suffered an injury in fact by being denied full access to, enjoyment of, and communication with Defendant's Website and its physical stores.

72)     Because of the inadequate development and administration of the Website, Plaintiff is entitled to injunctive relief pursuant to 42 U.S.C. §12133 and 28 C.F.R. §36.303, to remedy the ongoing disability discrimination.

73)     Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff appropriate and necessary injunctive relief, including an order to:

    i.     Require Defendant to adopt and implement a web accessibility policy to make publicly available and directly link from the homepage of the Website to a functional statement as to the Defendant's policy to ensure persons with disabilities have full and equal access to and enjoyment of the goods, services, facilities, privileges, advantages, and accommodations through the Website and the physical locations.

    ii.    Require Defendant to take the necessary steps to make the Website readily accessible to and usable by blind and visually disabled users, and during that time period prior to the Website's being made readily accessible, provide an effective alternative method for individuals with visual disabilities to access the information available on the Website until such time that the requisite modifications are made, and

iii.     Require Defendant to provide the appropriate auxiliary aids such that individuals with visual disabilities will be able to effectively communicate with the Website for purposes of viewing and locating Defendant's stores and becoming informed of and purchasing Defendant's products, and during that time period prior to the Website's being designed to permit individuals with visual disabilities to effectively communicate, to provide an alternative method for individuals with visual disabilities to effectively communicate for such goods and services made available to the general public through the Website and the physical stores.

iv.     Plaintiff is entitled to recover her reasonable attorney's fees, costs, and expenses pursuant to the ADA. To that end, Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action and has agreed to pay them a reasonable fee for their services.

74)     WHEREFORE, Plaintiff requests entry of judgment in her favor and against Defendant for the following relief:

a.     A declaration that Defendant's website is in violation of the ADA;

b.     An Order requiring Defendant, by a date certain, to update its website, and continue to monitor and update its website on an ongoing basis, to remove barriers in order that individuals with visual disabilities can access, and continue to access, the website and effectively communicate with the website to the full extent required by Title III of the ADA;

c.      An Order requiring Defendant, by a date certain, to clearly display the universal disabled logo within its website, wherein the logo [1]would lead to a page which would state Defendant's accessibility information, facts, policies, and accommodations.  Such a clear display of the disabled logo is to ensure that individuals who are disabled are aware of the availability of the accessible features of the website;

d.      An Order requiring Defendant, by a date certain, to provide ongoing support for web accessibility by implementing a website accessibility coordinator, a website application accessibility policy, and providing for website accessibility feedback to insure compliance thereto.

e.      An Order directing Defendant, by a date certain to evaluate its policies, practices and procedures toward persons with disabilities, for such reasonable time to allow Defendant to undertake and complete corrective procedures to its website;

f.      An Order directing Defendant, by a date certain, to establish a policy of web accessibility and accessibility features for its website to insure effective communication for individuals who are visually disabled;

g.      An Order requiring, by a date certain, that any third-party vendors who participate on Defendant's website to be fully accessible to the visually disabled;

h.      An Order directing Defendant, by a date certain and at least once yearly thereafter, to provide mandatory web accessibility training to all employees who write or develop programs or code for, or who publish final content to, Defendant's website on how to

---

[1] 

conform all web content and services with ADA accessibility requirements and applicable accessibility guidelines;

i.      An Order directing Defendant, by a date certain and at least once every three months thereafter, to conduct automated accessibility tests of its website to identify any instances where the website is no longer in conformance with the accessibility requirements of the ADA and any applicable accessibility guidelines, and further directing Defendant to send a copy of the twelve (12) quarterly reports to Plaintiff's counsel for review.

j.      An Order directing Defendant, by a date certain, to make publicly available and directly link from its website homepage, a statement of Defendant's Accessibility Policy to ensure the persons with disabilities have full and equal enjoyment of its website and shall accompany the public policy statement with an accessible means of submitting accessibility questions and problems.

k.      An award to Plaintiff of her reasonable attorney's fees and costs pursuant to in 42 U.S.C. §§12181-12189, and pursuant to such other laws and statutes that may apply, and further relief as the Court deems just and equitable.

**COUNT II – TRESPASS**

Plaintiff realleges paragraphs 1 through 53 as if set forth herein.

75)     Defendant's website contains software analytics. Since Plaintiff has navigated Defendant's website as stated herein, Plaintiff's computer and the personal information and browsing history stored therein, has suffered a trespass by Defendant.

76)     Plaintiff never consented to and was unaware that Defendant's website was placing software on her computer.

77)     The "pop-up" or banner notice that appears on Defendant's website does not properly audibilize the cookies policy in a way where a visually disabled person like the Plaintiff can properly understand or give informed consent to allow tracking cookies to be placed on her computer.

78)     Defendant committed common law trespass in violation of Florida law against Plaintiff because Plaintiff did not consent to the placement of tracking and information securing software on her personal computer, which was done without her knowledge and consent.

79)     Defendant's trespass has damaged Plaintiff by affecting the condition and value of her computer.

80)     On its website, Defendant has an internet privacy policy section that can only be accessed by clicking a barely visible section at the bottom of the page called "Cookies Policy", providing that they use cookies and similar technologies to collect a consumer's information and they obtain non-public information from their users for their own advertising and marketing purposes by placing software on its website that collects a website user's preferences and internet browsing habits as follows:

**Cookie Policy**

Introduction

With this cookie policy, Officina Profumo Farmaceutica di Santa Maria Novella of America Corp. provides the following information on the use of cookies on the website accessible at the address https://us.smnovella.com/ (hereinafter the "Site").

**What are cookies?**

Cookies are small fragments of text, usually consisting of letters and/or numbers, which are sent by the Site and stored by the browser installed on the Device you are using for browsing, such as: a computer, tablet, mobile phone or other mobile Device (collectively referred to as the "Device"). Cookies are then sent back to the Site the next time you visit.

**Definitions**

First-party cookies: these come from the Site and may be permanent or temporary; they may be used to store information that will be reused the next time you visit the Site;

Third-party cookies: these are installed by a different domain, for example, if the Site incorporates elements from other sites, ads and advertising content.

Session cookies: these only last for as long as you are browsing the Site, following which they will be deleted from your device.

Permanent cookies: these are stored on your device for as long as set out in the table below under the "duration" column, after which they will be deleted unless you re-visit the Site.

**The cookies used on our site**

Strictly necessary cookies

These cookies are used to ensure the operation of our services and allow us to improve performance. These technologies allow our sites, services, apps and tools to store important information in your browser or Device and then use it to identify you later on our servers or internal systems. Where applicable, we protect cookies and other similar technologies to ensure that only the Data Controller and/or our authorised service providers can interpret them by assigning a unique code.

| Cookie | Description | Duration | Cookie type |
|---|---|---|---|
| secure_customer_sig | This cookie is used to store customer credentials securely when processing a purchase on the website - the cookie is essential in making a secure online transaction. | 1 year | First-party cookie |
| cart_currency | The cookie is necessary for the secure checkout and payment function on the web site. This function is provided by shopify.com. | 13 days | First-party cookie |
| cookieconsent_preferences_disabled | Stores the user's cookie consent state for the current domain | 1 year | First-party cookie |
| _cf_bm | This cookie is used to distinguish between humans and bots. This is beneficial for the website, in order to make valid reports on the use of their website. | 1 day | Third-party cookie |
| _shopify_d | The cookie is necessary for the secure checkout and payment | Session | First-party cookie |

| Cookie | Description | Duration | Cookie type |
|---|---|---|---|
| | function on the website. This function is provided by shopify.com. | | |
| Cookietest | This cookie is used to determine if the visitor has accepted the cookie consent box. | Session | First-party cookie |

Strictly necessary cookies do not require your consent to be installed on your Device. You can configure your browser to block or receive notifications about these cookies, but this will prevent certain parts of the Site from functioning. These cookies do not store any personal information.

Analytical and statistical cookies

These cookies allow us to count visits and traffic sources so that we can measure and improve the performance of the Site. They help us to know which pages are the most and least popular and to see how visitors move around the Site.

| Cookie | Description | Duration | Cookie type |
|---|---|---|---|
| _gat | Used by Google Analytics to throttle request rate | 1 day | First-party cookie |
| _ga | Registers a unique ID that is used to generate statistical data on how the visitor uses the website. | 2 years | First-party cookie |

| Cookie | Description | Duration | Cookie type |
|---|---|---|---|
| _gid | Registers a unique ID that is used to generate statistical data on how the visitor uses the website. | 1 day | First-party cookie |
| _hssc | Identifies if the cookie data needs to be updated in the visitor's browser | 1 day | First-party cookie |
| _hssrc | Used to recognise the visitor's browser upon reentry on the website | Session | First-party cookie |
| _hstc | Sets a unique ID for the session. This allows the website to obtain data on visitor behaviour for statistical purposes | 1 year | First-party cookie |
| collect | Used to send data to Google Analytics about the visitor's device and behavior. Tracks the visitor across de vices and marketing channels. | Session | Third-party cookie |
| hubspotutk | Sets a unique ID for the session. This allows the website to obtain data on visitor behaviour for statistical purposes | 1 year | First-party cookie |
| localization | Holds the users time zone | 13 days | First-party cookie |

Analytical and statistical cookies require your explicit consent to be installed on your Device. You can configure your browser to block or receive notifications about these

cookies, but this will prevent certain parts of the Site from functioning. These cookies do not store any personal information.

81)    Due to Plaintiff's disability, she could not understand Defendant's website and she could not give informed consent to Defendant's installation of data and information tracking software on her computer.  Defendant also could not give informed consent to Defendant's collection of her browsing history and the placement of analytics on her computer.

82)    Thus, Plaintiff has no adequate remedy at law to redress Defendant's knowing and reckless disregard for Plaintiff's right to exclude others from her computer and determine which programs should be installed and operated on her computer.

WHEREFORE, Plaintiff demands judgment against Defendant for Plaintiff's damages, interest, costs, and such further relief as the Court deems just and equitable.

Submitted by:

Mendez Law Offices, PLLC
Attorneys for Plaintiff
P.O. BOX 228630
Miami, Florida 33172
Telephone: 305.264.9090
Facsimile: 1-305.809.8474
Email:info@mendezlawoffices.com
By: _____/s/_____
DIEGO GERMAN MENDEZ, ESQ.
FL BAR NO.: 52748

Adams & Associates, P.A.
Attorneys for Plaintiff
6500 Cowpen Road, Suite 101
Miami Lakes, FL  33014
Telephone:  786-290-1963
Facsimile:  305-824-3868

Email: radamslaw7@gmail.com
By: _____/s/_____
RICHARD J. ADAMS, ESQ.
FL BAR NO.: 770434